O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| Chris Kohler, | ) | CV 11-4451 RSWL (SPx) |
| Plaintiff, | ) | |
| | ) | **ORDER Re:** Plaintiff's |
| vs. | ) | Motion for Summary |
| | ) | Judgment, or Partial |
| | ) | Summary Judgment in the |
| | ) | Alternative, Against |
| Bed Bath & Beyond of | ) | Defendant Bed Bath & |
| California, LLC, et. al | ) | Beyond of California, |
| | ) | LLC [48], and Cross- |
| | ) | Motion for Summary |
| Defendants. | ) | Judgment of Defendant |
| | ) | Bed Bath & Beyond of |
| | ) | California Limited |
| | ) | Liability Company [57] |
| | ) | |

On July 19, 2012, Plaintiff Chris Kohler's
("Plaintiff") Motion for Summary Judgment, or Partial
Summary Judgment in the Alternative, Against Defendant
Bed Bath & Beyond of California, LLC [48] and Defendant
Bed Bath & Beyond of California, LLC's ("Defendant")
Cross-Motion for Summary Judgment of Defendant Bed Bath
& Beyond of California Limited Liability Company [57]
came on for regular calendar before the Court.  The

Court having reviewed all papers submitted pertaining to these Motions and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

As a preliminary matter, the Court **OVERRULES** Plaintiff's Evidentiary Objections and **DENIES** Defendant's Requests for Judicial Notice.  The Court hereby **DENIES** Plaintiff's Motion for Summary Judgment. The Court **GRANTS** Defendant's Cross-Motion for Summary Judgment as it relates to Plaintiff's federal Americans with Disabilities Act ("ADA") claims.  Accordingly, the Court **DISMISSES without prejudice** Plaintiff's remaining state law claims.

**I.   BACKGROUND**

Plaintiff is physically disabled and uses a wheelchair to get around.  On May 24, 2011, Plaintiff brought suit against various retail and restaurant establishments located in the Lake Elsinore Marketplace, a shopping center located in Lake Elsinore, California.  In his Complaint, Plaintiff alleges that the establishments violated the ADA as well as two California state statutes, the Unruh Civil Rights Act ("Unruh Act") and the California Disabled Persons Act ("CDPA") [1].  With the exception of Defendant Bed Bath & Beyond, all other Defendants named in the Complaint have been dismissed from this Action.

Plaintiff alleges that during three visits to Defendant's Lake Elsinore, California location he was denied full and equal access because of his disability.

Plaintiff's last visit was on May 16, 2012.  The specific violations of the ADA and state law that Plaintiff alleges against Defendant are as follows:

- The slope and cross slopes of disabled parking spaces exceed the two percent requirement under ADA regulations
- The slope and cross slopes of access aisles in the parking lot exceed the two percent requirement under ADA regulations
- The bathroom stall door is not self-closing
- The strike side[1] clearance when entering the men's restroom is insufficient
- The front roll of toilet paper is more than twelve inches from the front of the toilet
- The operable part of the paper towel dispenser is mounted too high
- The paper towel dispenser requires pinching, twisting, or grasping to operate
- The pipes beneath the sink in the men's restroom are not properly insulated
- The strike side clearance when exiting the men's restroom is insufficient

**II.  LEGAL STANDARD**

Summary judgment is appropriate when the pleadings,

---

[1] When referring to doors, the strike side is the side on which the door opens, opposite the hinges.

affidavits, and other supporting papers demonstrate
that there are no genuine issues of material fact, and
the moving party is entitled to prevail as a matter of
law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 322 (1986).  When making this
determination, the Court must view the record in the
light most favorable to the non-moving party.  <u>Anderson
v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  A
"genuine" dispute is one that is supported by evidence
sufficient to permit a reasonable jury to find in favor
of the nonmoving party.  <u>Id.</u> at 247-48.

**III. ANALYSIS**

    **A.  <u>Evidentiary Objections</u>**

    As a preliminary matter, the Court evaluates
Plaintiff's Evidentiary Objections to three
Declarations submitted by Defendant.

    First, the Court **OVERRULES** Plaintiff's objections
to the Declaration of Dustin Jaggli ("Jaggli Decl.")
and **OVERRULES** Plaintiff's objections to the Declaration
of Steve Cerda ("Steve Cerda").  The Court finds that
Defendant's non-disclosure of both Jaggli and Cerda
prior to the filing of the instant Motions was
substantially justified.  Fed. R. Civ. P. 37(c)(1).
Accordingly, exclusion of their Declarations in the
instant Motions is unwarranted.

    In addition, the Court **OVERRULES** Plaintiff's
objections to the Declaration of Larry Wood ("Wood
Decl.").  Plaintiff objected to the Wood Declaration on

the grounds that the Declaration is a sham and that Wood is an undisclosed witness.  However, the Court finds that Defendant promptly corrected and adequately explained the error regarding the date on the signature page of the Declaration.  Furthermore, Defendant was not required to disclose Wood as an expert witness prior to the filing of the instant Motions.  The deadline to disclose expert witnesses had not yet passed.  Fed. R. Civ. P. 26(a)(2)(D) (deadline to disclose experts is 90 days before trial).

## B.   Requests for Judicial Notice

As an additional preliminary matter, the Court **DENIES** Defendant's Requests for Judicial Notice of filings and documents related to two other Central District cases.

## C.   Plaintiff's Standing Under the ADA

The main issue in Plaintiff's Motion and Defendant's Cross-Motion surrounds the existence of alleged barriers that violate the ADA.  However, Defendant has also argued that Plaintiff lacks standing under the ADA because he has failed to adequately allege injury-in-fact.  Specifically, Defendant contends that Plaintiff has not alleged that he was actually prevented from making full use of Defendant's facility.  Since adequately alleging injury-in-fact is constitutionally required, the Court will first address Plaintiff's standing in this case.

In order to have constitutional standing, Plaintiff

must demonstrate that (1) he has suffered an injury-in-fact that is both concrete and particularized and actual or imminent; (2) the injury is traceable to the defendant's challenged action; and (3) it is likely that the injury will be redressed by a favorable decision.  City of Sausalito v. O'Neill, 386 F.3d 1186, 1197 (9th Cir. 2004); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  However, courts have been instructed to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance. Chapman v. Pier 1 Imports, 631 F.3d 939, 946 (9th Cir. 2011).

Here, Plaintiff has alleged that he visited Defendant's Lake Elsinore store and made purchases three times on May 9, 2011; May 25, 2011; and May 16, 2012.  Kohler Decl. ¶ 5.  Plaintiff further states that during these visits he encountered nine architectural barriers that violate both state and federal law.  Id. ¶ 8.  Under the ADA, a disabled person suffers an injury-in-fact when discriminatory architectural barriers deter him from returning or they "otherwise interfere with his access to" the facility.  Chapman, 631 F.3d at 950.  In this Action, for each barrier encountered, Plaintiff has indicated how the barrier has affected or could affect his access to the facility in the future.  Kohler Decl. ¶ 8.  For example,

1    Plaintiff states that when the slope and cross slope of
2    a disabled parking space exceeds the maximum allowed
3    under the ADA Accessibility Guidelines ("ADAAG"),[2] it
4    makes it difficult for him to transfer in and out of a
5    vehicle.  Id. ¶ 8(c).  This is sufficient to meet the
6    injury-in-fact requirement for standing because it
7    gives rise to a plausible inference that Plaintiff will
8    be deterred from visiting Defendant's store in the
9    future.  See, e.g. Kohler v. CJP, Ltd., 818 F. Supp. 2d
10   1169, 1174-45 (C.D. Cal. 2011), Kohler v. Bed Bath &
11   Beyond of Cal., LLC, No. 11-1246, 2012 WL 2449928 (C.D.
12   Cal. June 27, 2012).  Accordingly, Plaintiff has
13   constitutional standing to raise his ADA claims.
14        **D.    Summary Judgment As To ADA Claims**
15             i.        Slope and Cross Slopes of Disabled
16                       Parking Spaces
17        Under the ADA, liability for non-compliance is
18   assigned to "any person who owns, leases (or leases
19   to), or operates a place of public accommodation."  42
20   U.S.C. § 12181(a).  Here, the Court finds that
21   Defendant does not own, lease, or operate the parking
22   lot at Lake Elsinore Marketplace ("Shopping Center")
23   and is therefore not liable under the ADA.
24   Accordingly, the Court **DENIES** Plaintiff's Motion and
25   **GRANTS** Defendant's Cross-Motion for Summary Judgment
26
27        [2] The ADA Architectural Guidelines ("ADAAG") are
28   codified in the Code of Federal Regulations.

regarding the slope and cross slopes of the disabled
parking spaces in the Shopping Center.

First, Defendant is one of several establishments
that lease store space at the Shopping Center from Lake
Elsinore Marketplace LLC ("Landlord").  Furthermore, it
is undisputed that Defendant does not own the parking
lot at the Shopping Center and Plaintiff does not argue
that Defendant operates the parking lot.  Therefore,
the only issue that needs to be addressed is whether
Defendant leases the parking lot for the purposes of
liability under the ADA.

Under Defendant's lease agreement with Landlord,
the parking lot is deemed a "Common Area" and is
"available for the joint use and benefit" of Defendant,
other Shopping Center tenants, and customers.  Freeman
Decl., Ex. 1.  Furthermore, the lease also states that
"Landlord shall operate, maintain, repair and replace
the Common Areas as required by the Lease . . . and
Landlord shall comply with all applicable Legal
Requirements."  Id.

It is Plaintiff's main contention that Defendant
"leases" the parking lot, and while Landlord may be
jointly liable, Defendant cannot be excused from
responsibility under the ADA.  Plaintiff's contention
is misguided.  The lease explicitly states that the
parking lot is a common area, which is firmly in the

control of Landlord.[3]  Plaintiff has supplied no
specific evidence to controvert the contents of the
lease.  Accordingly, Landlord is the party responsible
for ADA compliance of the parking lot.  Cf. Restatement
(Second) of Property: Landlord & Tenant § 17.3
(landlord liable to tenants and third parties on
portions of property that remain in landlord's
control).

Plaintiff relies on Botosan v. Paul McNally Realty
to argue that Defendant cannot contract away its
responsibilities under the ADA.  216 F.3d 827 (9th Cir.
2000).  However, Plaintiff's reliance is misplaced.
Plaintiff contends that, under Botosan, a lease
agreement cannot excuse a party from liability under a
civil rights statute.  However, Botosan is
distinguishable because in that case it was the
landlord trying escape liability by pointing to lease
provisions handing over responsibility to the tenant.
Id. at 832.  The Ninth Circuit held that as an owner of
the public accommodation, the landlord was still
explicitly liable under the ADA, despite the lease

---

[3] In addition to the language in the lease itself,
this finding is also supported by the definitions of
"lease," "possessory interest," and "common area,"
which are located in Black's Law Dictionary (9th ed.
2009).

1  provisions.  Id. at 832-34.  Here, Defendant is the
2  *tenant* who never owned or had any control over the
3  parking lot in the first place.  Moreover, the lease
4  between Defendant and Landlord makes clear that
5  Defendant never accepted any control or responsibility
6  over the parking lot.  Freeman Decl., Ex. 1.  Thus,
7  Defendant is not trying to contract away its
8  responsibilities and is not liable under the ADA
9  statute for the parking lot.  Therefore, the Court
10  **GRANTS** Defendant's Cross-Motion for Summary Judgment as
11  to the disabled parking spaces**.**
12          ii.     Slope and Cross Slopes of Access
13                  Aisles in the Parking Lot
14      For the same reasons as above, the Court **DENIES**
15  Plaintiff's Motion and **GRANTS** Defendant's Cross-Motion
16  for Summary Judgment with regard to the access aisles
17  in the parking lot.  The parking lot, where the access
18  aisles are located, is a common area which is under the
19  control of Landlord and not leased by Defendant.
20  Accordingly, the party responsible for ADA compliance
21  is Landlord, not Defendant.
22          iii.    Self-Closing Bathroom Stall Door
23      The Court finds that Plaintiff's asserted barrier
24  that the bathroom stall door is not self-closing is
25  **moot** under the ADA.  Regardless of whether or not the
26  alleged barrier existed at the times that Plaintiff
27  visited Defendant's store, there is no genuine issue
28  regarding the fact that the barrier does not exist now.

1    ADAAG § 4.23.4 requires an "outward swinging, self-
2  closing door" for at least one stall in a public
3  accommodation restroom.   Plaintiff's last visit to the
4  store was on May 16, 2012.   Kohler Decl. ¶¶ 5-7.   At
5  that time, Plaintiff states that the stall door was not
6  self-closing, attaching photographs for support.
7  Kohler Decl. ¶¶ 7, 8(g); Ex. B at 9-10.   However, more
8  recently, on June 5, 2012, a service technician hired
9  by Defendant states that the stall door was equipped
10  with self-closing hinges, attaching photographs he took
11  that day.   Cerda Decl. ¶ 3, Ex. 2.   In addition,
12  Defendant's expert, a Certified Access Specialist,
13  states that he has seen these photographs and can
14  attest to the fact that the bathroom stall door is
15  self-closing and ADA compliant.   Wood Decl. ¶ 8.
16  Plaintiff has submitted no evidence to contradict the
17  fact that on June 5, 2012, the bathroom stall door was
18  ADA compliant.   Plaintiff's only response has been to
19  object to Defendant's Declarations on the basis of
20  procedural defects.   Therefore, the Court finds that
21  there is no genuine issue of material fact regarding
22  the bathroom stall door being self-closing at this
23  time.

24    Since Plaintiff's asserted barrier does not exist
25  at this time, Plaintiff cannot obtain relief from this
26  Court.   "Because a private plaintiff can sue only for
27  injunctive relief (i.e., for removal of the barrier)
28  under the ADA, a defendant's voluntary removal of

1   alleged barriers prior to trial can have the effect of
2   mooting a plaintiff's ADA claim." <u>Oliver v. Ralphs</u>
3   <u>Grocery Co.</u>, 654 F.3d 903, 905 (9th Cir. 2011).
4   Consequently, Plaintiff's ADA claim for the bathroom
5   stall door is **moot.**  <u>See, e.g.</u> <u>Kohler v. Bed Bath &</u>
6   <u>Beyond of Cal., LLC</u>, No. 11-01246, 2012 WL 2449928
7   (C.D. Cal. June 27, 2012); <u>Rush v. Fresh and Easy</u>
8   <u>Neighborhood Mkt., Inc.</u>, No. 10-09304 (C.D. Cal. Dec.
9   6, 2011).  Therefore, the Court **DENIES** Plaintiff's
10  Motion and **GRANTS** Defendant's Cross-Motion for Summary
11  Judgment on this issue.

12       Furthermore, the Court rejects Plaintiff's argument
13  that his claim is not moot because Defendant is free to
14  return to the offending conduct at any time.  There is
15  no evidence or any reason to suggest that Defendant
16  will revert back to non-compliance with the ADA.
17  <u>Friends of the Earth v. Laidlaw Envtl. Servs.</u>, 528 U.S.
18  167, 170 (2000) ("A case might become moot if
19  subsequent events make it absolutely clear that
20  allegedly wrongful behavior could not reasonably be
21  expected to recur.").  Plaintiff's argument is
22  illogical because there is no benefit for Defendant in
23  reverting back to non-compliance and doing so would
24  actually cost Defendant more than maintaining
25  compliance.

26          iv.     <u>Strike Side Clearance at Entrance to</u>
27                  <u>Men's Restroom</u>
28       The Court finds as a matter of law that Plaintiff

                                12

has not asserted an actionable barrier under the ADA
with regard to the strike side clearance at the door
entering the men's restroom.   Accordingly, the Court
**DENIES** Plaintiff's Motion and **GRANTS** Defendant's Cross-
Motion for Summary Judgment on this point.

At issue here is whether or not the ADA's
requirements for strike side door clearance refer to
wall space or floor space.   For physical structures to
comply with the ADA, they must meet the requirements
set forth in ADAAG.   The disputed question of law here
pertains to ADAAG § 4.13.6 and its accompanying
illustration, Figure 25.   Section 4.13.6 sets forth the
following:

**Maneuvering Clearances at Doors.**   Minimum
maneuvering clearances at doors that are not
automatic or power-assisted shall be as shown in
Fig. 25. The floor or ground area within the
required clearances shall be level and clear.

Figure 25 contains diagrams illustrating the
maneuvering clearances required for the two sides of
different kinds of doors and approaches.   The diagram
at issue here is part of Fig. 25(a), which pertains to
the pull-side, front approach of swinging doors.   The
corresponding note to Fig. 25(a) states the following:

Front approaches to pull side of swinging doors

13

1    shall have maneuvering space that extends 18 in
2    (455mm) minimum beyond the latch side of the door
3    and 60 in (1525 mm) minimum perpendicular to the
4    doorway.

5

6    It is Plaintiff's contention that, based on the
7    diagram on the left side of Fig.25(a), the ADA requires
8    eighteen inches of clearance on the strike side *wall* of
9    the restroom door.  Plaintiff states that right now
10   there is less than twelve inches of wall space on the
11   strike side because there is a hallway directly
12   adjacent to the restroom entrance.  Kohler Decl.
13   ¶ 8(a).  However, the Court finds that the diagram on
14   the left side of Fig. 25(a) actually requires eighteen
15   inches of *clear floor space* on the strike side of the
16   door, not wall space.  Defendant's store has four feet
17   of clear floor space on the strike side of the restroom
18   entrance because of the adjacent hallway.  Wood Decl.
19   ¶ 5.
20   Just by looking at Fig. 25(a) and the accompanying
21   notes, there are several indicators that the eighteen-
22   inch requirement references floor space.  First, the
23   dotted line representing the boundary of clear floor
24   area is defined by ADAAG.  ADAAG § 3.1, Table 1
25   (Graphic Conventions). However, the solid black line
26   that appears to represent the wall is not defined.  <u>Id.</u>
27   It is illogical that ADAAG would set requirements for
28   that undefined solid black line when, in comparison,

the dotted line, representing the floor space, has been
clearly defined by the regulations.  If the diagram
referred to wall space, ADAAG would have defined the
solid black line.  Moreover, the notes accompanying
Fig. 25(a) reference "maneuvering space," which as
Defendant has noted, implies the space needed for a
wheelchair to back up and move forward in order to
navigate through the doorway.  <u>See</u> Wood Decl. ¶ 6.  It
is unclear how the length of the wall factors into the
need to back up and move forward in a wheelchair.
Also, the word "wall" is absent from Fig. 25(a) and the
accompanying notes.  However, the floor area is
explicitly referenced in ADAAG § 4.13.6, which Fig. 25
is attached to.  Thus, based on the regulation and
associated diagrams, the Court finds that the eighteen-
inch requirement pertains to clear floor space on the
strike side of the door.

Moreover, Defendant supplies expert opinion, from a
Certified Access Specialist, that further supports a
finding that the strike side clearance under ADAAG
§ 4.13.6 and Fig. 25 is unrelated to wall length.  <u>See</u>
Wood Decl. ¶¶ 5-7.  The expert's opinion is based on
experience and several government publications
regarding disabled access including (1)guides published
by the Department of Justice, (2) two California
Building Code manuals, and (3) the United States Access
Board's Scoping and Technical Requirements clarifying
ADAAG § 4.13.6.  <u>Id.</u> at Ex. 1-9.

1    Accordingly, the Court finds as a matter of law
2  that the strike side clearance requirements under ADAAG
3  § 4.13.6 and Fig. 25 refers to clear floor space, not
4  wall space.  <u>See</u> <u>Kohler v. Bed Bath & Beyond of Cal.,</u>
5  <u>LLC</u>, No. 11-01246, 2012 WL 2449928, at *11 (C.D. Cal.
6  June 27, 2012) (also finding that strike side clearance
7  under ADAAG § 4.13.6 and Fig. 25 is unrelated to wall
8  length).  Since Plaintiff has made no allegations that
9  the strike side floor space is in violation of the
10 ADAAG requirements, the Court **GRANTS** Defendant's Cross-
11 Motion for Summary Judgment on this issue.  Plaintiff
12 has failed to allege a violation of the ADA regarding
13 strike side clearance.

14          v.        <u>Toilet Tissue Dispenser Location</u>

15    The Court also finds that Plaintiff's alleged
16 barrier regarding the toilet paper dispenser in the
17 men's restroom is not actionable under the ADA.
18 Therefore, the Court **DENIES** Plaintiff's Motion and
19 **GRANTS** Defendant's Cross-Motion for Summary Judgment on
20 this issue.

21    Plaintiff alleges that the toilet paper dispenser
22 violates the ADA because the second roll of toilet
23 paper is further than twelve inches from the front of
24 the toilet seat.  Plaintiff gets this twelve-inch
25 measurement from the California Building Code.  CBC
26 § 1115(b)(9)(3).  However, California law does not
27 govern Plaintiff's ADA claim.  Moreover, under the
28 ADAAG regulations, restroom stalls do not require a

specific measurement from the front of the toilet seat to the last roll in the dispenser.  The requirements for ADA compliance of toilet paper dispensers in restroom stalls can be found in ADAAG § 4.16.6.

> **Dispensers.**  Toilet paper dispensers shall be installed within reach, as shown in Fig. 29(b). Dispensers that control delivery, or that do not permit continuous paper flow, shall not be used.

Figure 29(b) only indicates that a toilet paper dispenser must be a minimum of nineteen inches from the floor.  There is no reference to the distance a toilet paper dispenser must be from the front of the toilet seat.  See Fig. 29(b).  Plaintiff has made no allegations regarding the height of the toilet paper dispenser.  Accordingly, Plaintiff has not asserted an actionable barrier under the ADA with regard to the toilet paper dispenser.  See Strong v. Walgreen Co., No. 09-611, 2011 WL 5374125, at *9 (S.D. Cal. Nov. 8, 2011); cf. Kohler v. Bed Bath & Beyond of California, LLC, No. 11-01246, 2012 WL 2449928, at *12 (C.D. Cal. June 27, 2012).

> vi.    Mounting of Paper Towel Dispenser

The Court finds that Plaintiff's alleged barrier regarding the mounting of the paper towel dispenser is not actionable under the ADA.  Plaintiff only alleges that the paper towel dispenser violates state law,

specifically CBC § 1115(b)(9)(2), which requires the
dispenser to be mounted within forty inches of the
floor.  Therefore, the Court need not consider this
barrier in the context of Plaintiff's ADA claims.

Furthermore, even if the paper towel dispenser
mounting was actionable under the ADA, the Court cannot
consider this barrier because Plaintiff did not assert
it in his Complaint.  The Ninth Circuit has held that
in order for a defendant in an ADA action to have fair
notice of a claim under Federal Rule of Civil Procedure
8, a plaintiff must identify all alleged barriers in
the complaint itself.  <u>Oliver</u>, 654 F.3d at 909.

Accordingly, the Court **DENIES** Plaintiff's Motion
and **GRANTS** Defendant's Cross-Motion for Summary
Judgment on this issue under the ADA.

vi.    <u>Paper Towel Dispenser Controls</u>

The Court finds that Plaintiff's alleged barrier
regarding the paper towel dispenser requiring "tight
grasping, pinching, or twisting of the wrist" is **moot**
under the ADA.

ADAAG § 4.27.4 governs the instant issue and states
that "controls and operating mechanisms shall be
operable with one hand and shall not require tight
grasping, pinching, or twisting of the wrist."  On May
16, 2012, Plaintiff states that he encountered the
paper towel dispenser at Defendant's store and that it
required tight grasping, pinching or twisting of the
wrist.  Kohler Decl. ¶ 7, 8(j); Ex. B at 11.  However,

1    a service technician hired by Defendant states that as
2    of June 21, 2012, there are two paper towel dispensers
3    in the men's restroom.  Jaggli Decl. ¶ 2.  One of the
4    dispensers can be operated with a closed fist, and is
5    thus ADA compliant.  Id.  It is clear from the attached
6    photographs that no tight grasping, pinching, or
7    twisting of the wrist is required.  Id. at Ex. 1.
8    Also, Defendant's Certified Access Specialist has seen
9    the service technician's Declaration and the
10   photographs, and has attested to the dispenser's
11   compliance with the ADA.  Wood Decl. ¶ 11.  Plaintiff
12   has submitted no evidence that contradicts the more
13   recent observations regarding the paper towel
14   dispenser.  Therefore, the Court finds that there is no
15   genuine issue of material fact regarding the paper
16   towel dispenser controls in the men's restroom at this
17   time.

18       Since Plaintiff's asserted barrier does not exist
19   at this time, Plaintiff cannot obtain relief from this
20   Court under the ADA.  Thus, Plaintiff's claim regarding
21   the paper towel dispenser controls is **moot.**  See
22   Oliver, 654 F.3d at 905.  Moreover, it cannot
23   reasonably be expected that non-compliance will recur
24   because recurrence would cost rather than benefit
25   Defendant.  Friends of the Earth, 528 U.S. at 170.  The
26   Court therefore **DENIES** Plaintiff's Motion and **GRANTS**
27   Defendant's Cross-Motion on this issue.

28            vii.    Insulation of Undersink Pipes

19

As to Plaintiff's asserted barrier that the drain pipes under the sinks in the restroom lack sufficient insulation, the Court finds that this claim is also **moot**.

ADAAG § 4.19.4 requires that hot water and drain pipes under lavatories be "insulated or otherwise configured to protect against contact."  Plaintiff has submitted a photograph he took on May 16, 2012 of barely exposed pipes under the sinks in the men's restroom.  Kohler Decl. ¶ 7, 8(i); Ex. B at 9. However, as with other asserted barriers already addressed, Defendant submits photographs and Declarations that indicate that as of a more recent date, June 5, 2012, this condition does not exist. There are no exposed pipes underneath the sinks.  Cerda Decl. ¶ 2, Ex. 1.; Wood Decl. ¶ 12.  Plaintiff has submitted no evidence contradicting the more recent observations regarding the pipes in the restroom. Therefore, the Court should find that there is no genuine issue of material fact that as of June 5, 2012, the insulation on the pipes underneath the sinks are ADA compliant.

Since Plaintiff's asserted barrier does not exist at this time, Plaintiff cannot obtain relief from this Court under the ADA and Plaintiff's claim is **moot.**  See Oliver, 654 F.3d at 905.  Furthermore, it cannot reasonably be expected that non-compliance will recur because, again, there is no conceivable benefit to

1  Defendant in returning to non-compliance.  <u>Friends of</u>
2  <u>the Earth</u>, 528 U.S. at 170.  Instead, recurrence would
3  likely cost Defendant.  The Court thus **DENIES**
4  Plaintiff's Motion and **GRANTS** Defendant's Cross-Motion
5  for Summary Judgment on this issue.
6           ix.      <u>Strike Side Clearance at Men's</u>
7                    <u>Restroom Exit</u>
8       As to Plaintiff's final asserted barrier, regarding
9  the strike side clearance at the door when exiting the
10 men's restroom, the Court finds that Plaintiff has not
11 asserted an actionable barrier under the ADA.
12 Accordingly, the Court **DENIES** Plaintiff's Motion and
13 **GRANTS** Defendant's Cross-Motion for Summary Judgment on
14 this issue.
15      The previous analysis regarding the strike side
16 clearance at the entrance of the men's restroom applies
17 to this alleged barrier as well.  Plaintiff again cites
18 to ADAAG § 4.13.6 and Fig. 25 arguing that the
19 requirements refer to wall space.  However, as already
20 stated, the strike side clearance requirements under
21 ADAAG § 4.13.6 and Fig. 25 set minimum dimensions for
22 *clear floor space, not wall space.*  Since Plaintiff has
23 made no allegations regarding the floor space violating
24 the strike side clearance requirements, Plaintiff has
25 not asserted an actionable barrier under the ADA.
26      In summary, the Court **DENIES** Plaintiff's Motion and
27 **GRANTS** Defendant's Cross-Motion for Summary Judgment on
28 all of Plaintiff's ADA claims.

1     **E.   Plaintiff's State Law Claims**

2          The only basis of jurisdiction over Plaintiff's

3     state law claims is supplemental.  The Court's original

4     jurisdiction over this Action was based on federal

5     question jurisdiction pursuant to Plaintiff's ADA

6     claims.[4]  Since the Court has granted Defendant's Cross-

7     Motion for Summary Judgment on all of Plaintiff's ADA

8     claims, the only claims remaining now are the state law

9     claims under the Unruh Act and CDPA.

10         Moreover, the Court has authority to decline to

11    exercise supplemental jurisdiction over these state

12    claims because it "has dismissed all claims over which

13    it has original jurisdiction."  28 U.S.C. § 1367(c).

14    The Supreme Court has held that supplemental

15    jurisdiction is discretionary and that "needless

16    decisions of state law should be avoided both as a

17    matter of comity and to promote justice between the

18    parties."  <u>United Mine Workers of America v. Gibbs</u>, 383

19    U.S. 715, 726 (1966).  Here, to adjudicate the

20    remaining state claims would require knowledge of the

21    California Building Code, the California Health &

22    Safety Code, and other state laws and regulations.  A

23    state court would be a better venue for these issues.

24    Therefore, the Court declines to exercise supplemental

25    _____

26         [4] Neither party has asserted any facts to support

27    diversity jurisdiction, and it appears that both

28    Parties are citizens of California.

jurisdiction and **DISMISSES** Plaintiff's state law claims **without prejudice**. See, e.g. Kohler v. Bed Bath & Beyond of Cal., LLC, No. 11-01246, 2012 WL 2449928 (C.D. Cal. June 27, 2012); Rush v. Fresh and Easy Neighborhood Mkt., Inc., No. 10-09304 (C.D. Cal. Dec. 6, 2011).

**IV. CONCLUSION**

The Court hereby **OVERRULES** all of Plaintiff's Evidentiary Objections and **DENIES** Defendant's Requests for Judicial Notice.  The Court also **DENIES** Plaintiff's Motion for Summary Judgment.  In addition, for the above stated reasons, the Court **GRANTS** Defendant's Cross-Motion for Summary Judgment as to Plaintiff's ADA claims.  The Court **DISMISSES without prejudice** Plaintiff's remaining state law claims.

**IT IS SO ORDERED.**

DATED: July 23 , 2012.

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge